CHIEF JUSTICE WILLIAMS
delivered the opinion of the court:
This was a decretal sale of real estate at Louisville which descended from John Marshall, deceased, to his children and heirs-at-law, some of whom were minors.
The proceedings were irregular in not complying with the requisites of chapter 86 of our Revised Statutes.
Subsequently to the sale, and prior to the enactment of the enabling statute of February 26, 1868, some of the purchasers entered their several motions to vacate the sale, because of such irregularities, and some entered their motion subsequently.
After said enactment, Crawford, who appeared as guardian for the minor heirs, hied additional pleadings, seeking to correct and cure the irregularities, offering to execute the proper covenants, and resisting the vacating the sales, to all of which the purchasers objected.
The cause was referred to a commissioner, who made an additional report, and the evidence clearly establishes *250 the fact, that it was to the interest of the minor ward and heirs to have the land sold, and that it is greatly to their interest to sustain the sales made, rather than to have a resale; and one witness, who says he is familiar with the property and condition of the heirs, thinks a resale would injure them at least ten thousand dollars.
Crawford, as guardian, executed the proper covenants, and the proceedings are now regular, all defects in the original proceedings being cured by the subsequent ones. The court set aside the sales so far as the purchasers had entered their motions previous to said enactment, but overruled those which were subsequently made. This must have been done for the reason, as urged by the appellee’s counsel, that said enactment was unconstitutional as to those who then had motions pending at its date.
This enactment was not an attempt by special legislation to sell infants’ real estate, but was a statute of general import to authorize the perfecting of irregular proceedings, which were intended to comply with the general statute, but, from inadvertence or other cause, did not; therefore it is not in conflict with section 32, article 2, State Constitution.
The purchasers had acquired no vested right to have the sale set aside, notwithstanding the title could be made perfect to them; and as a good legal title was what they supposed had been purchased, and was all that they did or had the right to expect, if this could, within a reasonable time, be secured to them, no wrong or injustice would be done. As, however, they should be secured a perfect title before the purchase money should be coerced out of them, and a reasonable time to perfect the title allowed, the purchasers should not be compelled to pay interest in the meantime.
*251 As we think their title under these proceedings will be perfect on a return of the cause, they should be compelled, at once, to pay the purchase price without interest, however, after their bonds were due, and to accept proper deeds, to be made under the supervision of the court.
Crawford appears in the case as statutory guardian, and has executed the necessary bonds. It is said that he is but a public guardian; of this, however, we find no evidence in the record; but even if this were so, we suppose, in the absence of a statutory guardian, the public guardian could take control of suits which he might find pending and not being prosecuted for the want of a statutory guardian. These proceedings were originally begun by statutory guardians; but it may be presumed that they have either died, or ceased to act from some other cause, as no one of them appears in the record to contest Crawford’s right to control and manage the case.
Wherefore, the judgment vacating the sale is reversed as to those purchasers seeking and obtaining it, and affirmed as to such whose motion to vacate the sale was overruled, with directions for further proceedings as now indicated.